IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **TOM GOODLET AND ADRIENNE WILLIAMS,** on behalf of themselves, and all other plaintiffs similarly situated, known and unknown, <br><br> Plaintiffs, <br><br> v. <br><br> **SCR MEDICAL TRANSPORTATION, INC.**, <br><br> Defendant. | No. 19-cv-03389 <br><br> The Honorable Young B. Kim <br> U.S. Magistrate Judge |

**MEMORANDUM IN SUPPORT OF PARTIES' MOTION FOR
FINAL APPROVAL OF PARTIES' JOINT STIPULATION AND
AGREEMENT TO SETTLE CLASS ACTION AND OTHER CLAIMS**

Plaintiffs Tom Goodlet and Adrienne Williams, ("Plaintiffs" or "Named Plaintiffs"), on behalf of themselves and all others similarly situated, and Defendant SCR Medical Transportation, Inc. ("SCR" or "Defendant" and collectively with Plaintiffs, the "Parties") hereby submit this Memorandum in Support of the Parties' Joint Stipulation of Settlement and Agreement to Settle Class Action and Other Claims (attached hereto as Exhibit 1) (hereinafter, the "Settlement Agreement").

**I. PROCEDURAL BACKGROUND AND SUMMARY OF THE COMPLAINT**

On May 20, 2019, Plaintiff Tom Goodlet filed a class action lawsuit in the United States District Court for the Northern District of Illinois. Dkt. 1. The case is titled *Goodlet v. SCR Medical Transportation, Inc.*, Case No. 1:19-cv-03389 (the "Action"). Count I alleges violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., Count II alleges willful violations under the FLSA; Count III seeks liquidated damages under the FLSA; Count IV asserts violations of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS §105/1 *et seq*., and Count V alleges violations under the Chicago Minimum Wage Ordinance ("CMWO"), §820 ILCS §115/1 *et seq*.

On February 12, 2020, Plaintiff filed a First Amended Complaint, which contained the same material allegations. Dkt. 38. (collectively referred to as the "Lawsuit"). On March 16, 2020, Plaintiff Adrienne Williams filed her Consent to join the Lawsuit. Dkt. 43. All claims are based upon Defendants' alleged practice of failing to compensate employees for pre- and post-shift work performed that was not recorded by Defendant's timekeeping and payroll system (referred to as "work off the clock"), which Plaintiffs alleged resulted in non-payment of overtime wages to them and class members.

On May 11, 2022, this Court entered an order preliminarily approving the class and establishing various dates relative to the mailing of class notice and deadlines for putative members to participate in the settlement. Dkt. 140, 141. That process has been completed, the claims period has closed, and the approved Settlement Administrator has provided the final report regarding participation in the Settlement and the final distribution of the Class Fund, all as outlined below.

## II.  THE PARTIES' SETTLEMENT IS FAIR AND REASONABLE AND FINAL APPROVAL SHOULD BE GRANTED

After extensive litigation, which included numerous depositions, and settlement negotiations which included Plaintiffs' counsel's review of thousands of pages of documents and substantial amount of data, including payroll and time records, dozens of communications and conferences between counsel, and a settlement conference between the Parties and this Court, the Parties have reached agreement as outlined herein. The key terms of the settlement are outlined below and were previously preliminarily approved by this Court. Dkt. 140, 141. The full settlement terms are set forth in the Class Action Settlement Agreement attached hereto as **Exhibit 1**.

### A.  The Class Definition and Settlement Period

For purposes of this settlement, the "**Settlement Class**" is defined as:

>All employees who work or worked for SCR Medical Transportation, Inc. as Drivers assigned to SCR's PACE Contract division or SCR's Private Contract division from May 20, 2016, to May 11, 2022.

### B. The Class Settlement Amount

Under the terms of the Settlement Agreement, SCR has agreed to pay up to One Million Two Hundred Thousand Dollars ($1,200,000.00) (the "**Gross Fund**") to settle the claims of the Class Members as provided in the Class Action Settlement Agreement. The allocation to the Class Members was made from the Net Fund which is defined as the remainder of the Gross Fund after deductions, payments, or allocations for (a) the Settlement Class Counsel's attorneys' fees and costs (33.33% of the Gross Fund or $400,000), and (b) Service Awards to be paid to the Settlement Class Representatives ($10,000 each for a total of $20,000). Accordingly, the allocation from the Net Fund available to be distributed to the Class Members was $780,000.

### C. Release and Bar of Claims

All Class Members who timely returned a valid Claim Form, which duly served as an FLSA Opt-In Form, completed the attestation and declaration included in the Claim Form, and did not exclude themselves from the IMWL/CMWO settlement by filing timely opt-out notices with the Settlement Administrator shall be deemed to have fully and finally relinquished all claims under the FLSA, IMWL and CMWO as set forth in Section II.F.2. of the Class Action Settlement Agreement (**Exhibit 1**). Those Class Members who failed to return a timely, valid Claim Form and failed to take any other action, shall be deemed to have fully and finally relinquished all claims under the IMWL and the CMWO. See Section V(E), *infra*, for a more thorough discussion of release and waiver provisions.

As preliminarily approved by this Court, upon granting final approval of the settlement, the Court shall dismiss this Lawsuit first without prejudice, which shall convert to a dismissal with prejudice at such time the Settlement Amount has been disbursed by the Defendant in accordance

with the Settlement Agreement and the Defendant demonstrates the same to the reasonable satisfaction of the Class Counsel.

### D. Attorneys' Fees and Costs

As noted above and preliminarily approved by this Court, as part of the Settlement Agreement, SCR will pay a total Four Hundred Thousand Dollard ($400,000.00), subject to the Court's approval, reflecting 33.33% of the Gross Fund.

### E. Unclaimed Funds

The Parties have agreed that within twenty-eight (28) days of the Effective Date, SCR shall deposit into a Qualified Settlement Fund an amount equal to (i) $1,200,000 less any Unclaimed Funds resulting from a Class Member not timely and validly submitting a Claim Form; plus (ii) the Settlement Administrator costs, capped at $32,000; plus (iii) the Service Awards of $20,000 in total. Since the funding amount will vary depending on the number of Claim Forms submitted, there is no "reverter" from the Qualified Settlement Fund for settlement amounts allocated to Class Members who do not return the Claim Form. The Qualified Settlement Fund is simply funded at a lower amount.

Should any checks received by Settlement Class members remain uncashed after sixty (60) days from the date they are issued, the same shall be deemed void, and Defendant shall retain any such uncashed funds

### F. Class Action Fairness Notice

The Settlement Administrator, on behalf of SCR, caused notice of the proposed settlement to the United States Attorney General and the Attorney Generals for all 50 states, Puerto Rico, the District of Columbia's Corporate Counsel, and Attorneys General of all other United States territories, under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1715 on June 8, 2022 via Federal Express Overnight Carrier.

**G.     The Form of Class Notice Was Reasonable and Satisfied Due Process**

The Notice of Class Action Settlement (Dkt. 137-2) was based upon the model form recommended by the Federal Judicial Center. It was approved by this Court and informed Class Members of the following in non-complicated English: (i) the claims in this case and the claims that Class Members will forfeit if they participate in the settlement; (ii) the material terms of the proposed settlement; (iii) Class Members' rights under the proposed settlement; (iv) how to get money from the settlement; (v) the amounts that will be requested in attorneys' fees and for the Service Awards to the Named Plaintiffs; and (vi) the answers to questions commonly asked by class members about class actions and the process by which a Court considers approval of a proposed class action settlement.

The Parties retained a third-party Settlement Administrator (American Legal Claims Service) to provide meaningful notice of the settlement to the Class Members. The Settlement Administrator's efforts are detailed in the Declaration of Due Diligence in Settlement Administration attached as **Exhibit 2** (the "Declaration"). On June 22, 2022, the Settlement Administrator mailed copies of the Court-approved Notice and Claim Form to the last known address of all Three Thousand Forty-Two (3,042) Class Members. For individuals for whom the notice was returned as undeliverable and without a forwarding address, the Settlement Administrator used commercially reasonable means to obtain a current address and promptly re-mailed the Notice and Claim Form to the updated address. If an updated address was not found or if the re-mailed package was returned a second time, it was deemed undeliverable. Of the 3,042 Notices mailed, 81 mailings were deemed totally undeliverable, or 2.66% of Class Members.

As a result of the efforts set forth in the Declaration **(Exhibit 2)**, One Thousand One Hundred Thirty-Six (1,136) of the Three Thousand Forty-Two (3,042) Class Members submitted timely and valid claims. This is a final claims rate of 37.34%. Of the $780,000 available to the

5

Class Members, $413,410.38 (53.00%) was claimed through the settlement process. There was one exclusion submission received by the Settlement Administrator, by Donald Gordon. Mr. Gordon's exclusion submission is attached hereto as **Exhibit 3**. After accounting for the Fifty-Two Thousand Dollars ($52,000.00) that will be paid by SCR for the administration cost and Service Awards, the total QSF, consisting of payments to: Settlement Class members, Class Counsel the Settlement Administrator and service awards to the Class Representatives, the total amount to be funded by SCR is Eight Hundred Sixty Three Thousand Five Hundred Eighty-Four Dollars and Forty-One Cents ($865,410.38) The final amounts attributable to each class member are detailed in the chart attached as **Exhibit 4**.

  The handling of unclaimed funds to SCR, as agreed to by the Parties and preliminarily approved by this Court, is appropriate under the circumstances and consistent with prevailing law in this circuit. The courts "have broad discretion in distributing unclaimed class action funds, and where the parties agree on the distribution of unclaimed class funds, the court should defer to that method of distribution." *Mangone v. First USA Bank*, 206 F.R.D. 222, 230 (S.D. Ill. 2001). In line with this principle, courts across the federal judiciary have permitted reversion of unclaimed funds to a defendant when the circumstances are appropriate and warrant it. The circumstances at issue here, and the proposed settlement presented herein, are appropriate for reversion of unclaimed funds to Defendant and fit into the established criterion, although (as noted above) this is not a true reversion since the Defendant is only funding the settlement after the Class Members have submitted Claim Forms. *See McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) ("Indeed, a reverter clause can be a useful tool in negotiating a settlement when the total number of eventual claimants is unknown. A defendant may agree to a higher maximum settlement amount—which allows more claimants to be fully compensated for their damages if a large number of claims are filed — in return for possible reversion of a portion of the unclaimed

6

funds."). Akin to the circumstances in *McKinnie*, where the number of claimants was unknown and the Defendant will only be compensating those who actually suffered from the alleged improper pay practice, and not paying those who did not, the reversion of unclaimed funds to Defendant as agreed upon by the Parties is proper.

Here, Defendant will fully fund and pay for attorneys' fees ($400,000), the cost of the Settlement Administrator ($32,000) and the Service Awards for the Class Representatives (a total of $20,000), which amounts to Four Hundred Fifty-two Thousand Dollars ($452,000.00). Of the $780,000 which was available for distribution to the Class Members, SCR will pay compensation only to those One Thousand One Hundred Thirty-Six (1,136) Class Members who returned timely Claim Forms and completed the declaration and attestation included in the Claim Form, where those Class Members certified that during their employment, they performed pre- and post-shift duties that took more time to complete than the fifteen minutes allotted by SCR. Those who did not return the Claim Form with the completed attestation are presumed not to have suffered any damages or otherwise have fallen victim to the alleged improper practice and as such are not owed any of the settlement amount – thus Defendant not having to fund the full amount of the Gross Fund and retaining Three Hundred Thirty-Four Thousand Five Hundred Eighty-Nine Dollars and Sixty-Two Cents ($334,589.62) is equitable.

### III. THE SETTLEMENT MEETS THE STANDARDS FOR FINAL APPROVAL

#### A. The Strength of Plaintiff's Case Relative to the Settlement Offer

Plaintiffs allege, on behalf of themselves and the identified class, that Defendants failed to compensate Plaintiffs and Class Members for pre- and post-shift work off the clock, which Plaintiffs alleged resulted in non-payment of overtime wages to them and Class Members. SCR disputes these allegations, has produced various payroll and time keeping documents and other records and testimony during the litigation to refute the allegations, denies that SCR's related

policies were uniform or common over the time period involved in the Action, and have asserted various legal defenses to Plaintiffs' claims. In addition, Defendant believes that Plaintiffs could not achieve Rule 23 class certification absent a settlement of the disputed claims because of, among other things, the number of individualized inquiries that would be required to litigate this case.

Given the uncertainty of whether the claims could be certified for class treatment, the difficulties of proof, and SCR's asserted legal defenses, the terms of the Class Action Settlement Agreement resolving the FLSA, IMWL and CMWO claims are fair and reasonable. Counsel for both Parties are experienced in class action litigation. The Parties have negotiated a Class Action Settlement Agreement that will result in SCR's payment to each of the Class Members which includes payment of alleged off-the-clock overtime wages and a portion of statutory damages (including FLSA liquidated damages, IMWL 2% statutory interest penalty for 2018, and IMWL treble damages and IMWL 5% statutory interest penalties thereafter, and CMWO treble damages)[1] to each member of the Settlement Class.

**B.    The Settlement Was Reached Through Arm's-Length Negotiations.**

Arm's-length negotiations conducted by competent counsel constitute *prima facie* evidence of fair settlements. *Berenson v. Faneuil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair.").

---

[1] Until February 18, 2019, the Illinois Minimum Wage Law provided for a statutory interest penalty of 2% of the underpayments for each month said underpayments remained outstanding. On February 19, 2019, the IMWL was amended to increase and add to the damage provisions of the statute. The Illinois Minimum Wage Law, as amended, now provides for recovery of both treble and five percent (5%) interest for each month of nonpayment of the amount(s) of the underpayments beginning February 19, 2019. See generally, 820 ILCS 105/1. See also *Burton v. DRAS Partners, LLC*, No. 2019-CV-02949, 2019 WL 5550579, at *5 (N.D. Ill. Oct. 27, 2019) ("Illinois law provided for 2% per month penalty interest until February 19, 2019. Since that time, the law provides for 5% per month penalty interest.").

The Settlement here is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation in general and with the legal and factual issues of wage and hour litigation in particular. In negotiating this Settlement, Plaintiffs' lead counsel has the benefit of over thirty (30) years of experience advocating for low-wage workers combined with an in-depth familiarity with the facts of this case. Similarly, Defendant's lead counsel is an experienced class action litigator with substantial experience in this area of law.

Settlement negotiations in this case took place over the course of numerous months and included a settlement conference before this Court with Honorable Magistrate Judge Young B. Kim. After a period of extensive formal written discovery, several depositions, and fully briefing class certification, the Parties engaged in good-faith settlement negotiations. These negotiations ultimately led to the exchange of more data related to Plaintiffs' overtime claims. Once all formal and informal discovery was conducted, the Parties continued their negotiations, extracted detailed information from payroll records and reviewed the same, constructed detailed spreadsheets taking into consideration the approximate date of underpayments, including IMWL/CMWO treble damages (which subsume and exceed FLSA liquidated damages) and the IMWL interest penalties, and ultimately reached an agreement on the terms set forth in the Class Action Settlement Agreement (attached as **Exhibit 1**). Plaintiffs' counsel supports the resulting settlement as fair and as providing more than merely reasonable relief, but exceptional relief to the Class Members.

### C. Amount of Opposition to the Settlement

There is no known opposition to the Settlement. No Class Member filed any objection to the Settlement. The Parties received only one (1) opt-out/exclusion request (see again Exhibit 3). As various courts have held, a low number of objectors compared to the number of potential class members creates a strong presumption in favor of approving the settlement. *See, e.g., In re*

9

*Cendant Corp. Litigation*, 264 F.3d 201, 234-35 (3d Cir. 2001).

### D. The Opinion of Competent Counsel

Plaintiffs' lead counsel, John W. Billhorn, is an experienced class action lawyer, with significant experience in the federal wage and hour arena. Mr. Billhorn believes this settlement is in the best interests of the Class and its members. Defendants' lead counsel, Jeffrey L. Rudd, is an experienced employment litigator and counsel and likewise believes this settlement is fair and reasonable.

### E. The Stage of the Proceedings and the Amount of Discovery Completed at the Time of Settlement

The Parties have exchanged a significant number of documents pertaining to this matter. For example, SCR produced complex and substantial data as to its timekeeping and payroll software, including underlying data detailing and reflecting hours and wages of Plaintiffs and Class Members. These time and payroll records, as well as information obtained during discovery, in turn provided a basis for Plaintiffs to engage in negotiations regarding unpaid wages allegedly suffered by Class Members during their terms of employment within the relevant statute of limitations period. The Parties believe the relevant documents pertaining to this case have been exchanged and that they have considered all relevant data and other information so as to properly evaluate this Settlement and enter into the same.

## IV. THE IMWL AND CWMO CLAIMS (COUNTS IV AND V) MEET THE REQUIREMENTS OF RULE 23 FOR A SETTLEMENT CLASS

Settlement classes "afford[] considerable economies to both the litigants and the judiciary and [are] also fully consistent with the flexibility integral to Rule 23;" *see In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 794 (3d Cir. 1995), and they have become "a stock device" for resolving major multi-plaintiff litigation. *See Amchem Products,*

*Inc. v. Windsor*, 521 U.S. 591, 618 (1997). The proposed Settlement Class in this case fully satisfies the criteria set forth in Rules 23(a) and 23(b)(3).[2]

A settlement or compromise of a class action requires district court approval. Fed.R.Civ.P. 23(e); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997). The law encourages settlement of class actions, and a voluntary settlement is the preferred method of class action resolution. *Isby,* 75 F.3d at 1196. "[C]ourts look upon the settlement of lawsuits with favor because it promotes the interests of litigants by saving them the expense and uncertainties of trial, as well as the interests of the judicial system by making it unnecessary to devote public resources to disputes that the parties themselves can resolve with a mutually agreeable outcome." *Hispanics United v. Village of Addison*, 988 F. Supp. 1130, 1149 (N.D. Ill. 1997).

### A. Certification Under Rule 23(a)

#### 1. Numerosity -- Rule 23(a)(1)

To satisfy numerosity, the class size must be large enough such that joinder of all members is impracticable. "[W]hile there is no number requiring or barring a finding of numerosity, a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes." *Toney v. Rosenwood Care Ctr., Inc.*, 1999 U.S. Dist. LEXIS 4744, at *22 (N.D. Ill. 1999); *see also Swanson,* 415 F.2d at 1333 n.9 (7th Cir. 1969) (40 class members establish numerosity). In this case, the Parties have established the size of the Settlement Class, which contains Three Thousand Forty-two (3,042) individuals. Accordingly, the size of this putative class satisfies Rule 23(a)(1).

---

[2] While Defendant here requests that the Class Settlement be finally approved, Defendant specifically reserves and does not waive any and all defenses to Rule 23 Class Certification in the event the Class and settlement terms proposed in the Class Action Settlement Agreement are not fully and finally approved by the Court.

11

### 2. Commonality -- Rule 23(a)(2)

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). "[T]he cases have not been overly restrictive in setting out the requirements for commonality, with the existence of a common nucleus of operative fact usually being enough to qualify. . . ." *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992).

Here, Plaintiffs' claims are based on questions of fact and law common to the class. Regarding the IMWL and CMWO claims, each Class Member is, or was, employed by SCR as an hourly employee driver and were subject the same timekeeping policies and technology and performed the same or similar pre- and post-shift work, for which Plaintiffs allege they were not fully compensated. Plaintiffs and each Class Member performed these pre- and post-shift duties, either before or after clocking in using the timekeeping mechanism located inside SCR's vans and buses did not receive additional compensation beyond the fifteen extra minutes provided by SCR despite Plaintiffs' allegations that these duties took more than fifteen minutes to complete. Plaintiffs allege that Defendant had a common practice of not compensating Plaintiffs and Class Members for all pre- and post-shift work performed at overtime rates of pay pursuant to the requirements of the IMWL and CMWO. Resolution of this issue requires the common application of both law and fact.

### 3. Typicality -- Rule 23(a)(3)

The issue of typicality is closely related to that of commonality. *Rosario*, 963 F.2d at 1018. To satisfy the typicality requirement of Rule 23(a)(3), the class representative's claims must arise from the same practice or course of conduct and be based on the same legal theory as the claims of class members. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). In this case, the claims of Plaintiffs and the Class Members arise from the same alleged conduct of Defendant. Specifically, Plaintiffs allege that Defendant failed to fully compensate them and Class

Members for all time spent performing pre- and post-shift work that was not recorded by SCR's timekeeping system, resulting in failure to pay all earned overtime wages in violation of the IMWL and CMWO. Typicality is meant to ensure that the claims of the class representative have the "same essential characteristics as the claims of the class at large." *Retired Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). That is the case here where Plaintiffs allege that they personally performed pre- and post-shift work off the clock for which they were not fully compensated at their applicable overtime rates of pay.

### 4. Adequacy of Representation -- Rule 23(a)(4)

Rule 23(a)(4) requires the named class representatives "will fairly and adequately protect the interests of the class." Here, Plaintiff Goodlet and Plaintiff Williams satisfy this standard. Plaintiffs do not have antagonistic or conflicting claims with other Class Members. Plaintiffs and the Class Members all were employed by SCR as hourly employees and all seek compensation for unpaid overtime wages incurred by performing off the clock pre- and post-shift duties. In addition, as explained in Section IV.B.2., *infra*, Plaintiffs' attorneys are qualified and able to conduct the proposed litigation vigorously.

### B. This Action Satisfies the Requirements of Rule 23(b)

In addition to meeting the requirements of Rule 23(a), a class action must also satisfy the requirements of one of the subdivisions of Rule 23(b). Rule 23(b)(3) provides that a class can be maintained if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The common questions of law and fact alleged in this case predominate over any individual issues. The dominant legal issue, as alleged by Plaintiffs, is whether Defendant's timekeeping practices resulted in uncompensated pre- and post-shit work and led to non-payment of wages in

violation of the IMWL or CMWO. The predominance requirement also is satisfied where a "common nucleus of operative facts," for which the law provides a remedy, exists among all class members. *Chandler v. Southwest Jeep-Eagle, Inc*., 162 F.R.D. 302, 310 (N.D. Ill. 1995). In this case, there is a common nucleus of operative fact that concerns the application of Defendants' alleged wage policies and procedures to the Class Members.

Further, a class action is superior to other methods of adjudication in this case. Judicial economy and efficiency, as well as consistency of judgments, would be achieved through the certification of the Class. *See Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill 1992). The alternative is potentially over 3,000 additional individual lawsuits asserting very small claims and protracted piecemeal litigation. In addition, courts in this judicial district have certified similar class claims seeking relief under the IMWL and CMWO under Rule 23(b)(3). *See, e.g., Franks v. MKM Oil, Inc.*, 2012 WL 3903782 (N.D. Ill. 2012) (granting class certification under Fed. R. Civ. P. 23(b)(3) for claims under IWPCA).

## V. THE AGREED-UPON ATTORNEYS' FEES ARE REASONABLE AND WITHIN THE RANGE OF POSSIBLE APPROVAL

Under the Settlement Agreement and subject to the Court's approval, Class Counsel will be paid Four Hundred Thousand Dollars ($400,000), reflecting 33.33% of the total Gross Fund. This Court has preliminarily approved Class Counsels' fees. Pursuant to the Class Action Settlement Agreement, and for settlement purposes only, Defendants do not contest Class Counsels' receipt of these fees and costs, nor do Defendants challenge the reasonableness of the amounts.

## VI. THE PROPOSED SERVICE AWARD IS REASONABLE AND WITHIN THE RANGE OF POSSIBLE APPROVAL

Each of Named Plaintiffs, Tom Goodlet and Adrienne Williams, will receive an additional Service Award ($10,000.00), paid by SCR, as incentives for their integral role in litigating the

14

Action on behalf of the putative class. Plaintiffs' actions will bring relief to them and the Class Members who, but for Plaintiffs' actions, would not have received any recovery at all. Plaintiffs participated in substantive written discovery, sat for depositions, assisted Plaintiffs' counsel in evaluation and analysis of Defendant's voluminous production of records and spreadsheets, and participated in a lengthy settlement conference. Plaintiffs served integral roles to settlement with their input and knowledge of the interplay between logistics of SCR's facility and pay and timekeeping practices, an exercise that would have been particularly difficult for Class Counsel without Plaintiffs' insight and experience of day-to-day work conditions at SCR. Plaintiffs acted over and above their duties as representatives of the Settlement Class and were instrumental in obtaining exceptional relief to the Settlement Class. However, for their overtime claims, Plaintiffs' recovery will be identical to other members of the Settlement Class and based solely on duration of employment with SCR during the relevant time period. As a result, Plaintiffs are not receiving preferential treatment in the settlement of their overtime claims.

## VII. CONCLUSION

For all the reasons set forth above, the Parties respectfully request that the Court enter FINAL APPROVAL of the Settlement and order distribution of the Settlement Funds in the manner set forth in the Settlement Agreement (Dkt. 137-1). Upon approval, the Parties will submit an agreed draft Order as directed by the Court, as to assist the Court in entering the Final Order.

Respectfully Submitted,

*Electronically filed 10/07/2022*

By: s/ John W. Billhorn

John W. Billhorn
Samuel D. Engelson
BILLHORN LAW FIRM
53 West Jackson Blvd., Suite 1137
Chicago, Illinois 60604

15

(312) 853-1450

*Attorneys for Plaintiffs, and all other Plaintiffs similarly situated, known and unknown*

By: <u>s/ Jeffrey L. Rudd</u>

Jeffrey L. Rudd
Sean C. Herring
JACKSON LEWIS P.C.
150 North Michigan Ave., Suite 2500
Chicago, Illinois 60607
(312) 803-4949

*Attorneys for Defendant*